IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VICTOR WARDELL WRIGHT      :

                            :   Criminal No. DKC 06-0038
    v.                    :   Civil Action No. DKC 08-2830

                            :

UNITED STATES OF AMERICA   :

**MEMORANDUM OPINION**

Pending before the court is a *pro se* motion filed by Victor Wardell Wright to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Paper 59). Also pending are Petitioner's motions for disqualification of the undersigned judge (paper 77) and for leave to conduct discovery (paper 60).[1] For the reasons that follow, each of these motions will be denied.

**I. Background**

On January 30, 2006, a federal grand jury returned an indictment charging Petitioner with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Petitioner's motion to suppress the firearm was

---

[1] Petitioner has additionally moved for summary judgment (paper 72), to strike the Government's response (paper 84), and for expedited consideration (paper 88). The motions for summary judgment and to strike the Government's response will be denied as moot, as they rely on the same arguments presented in the underlying petition. Similarly, the motion for expedited consideration will be rendered moot by the instant opinion and accompanying order.

denied after a hearing on May 31, 2006, and the case proceeded to trial before a jury on June 6, 2006. Two days later, the jury returned a verdict finding Petitioner guilty, and on October 16, 2006, he was sentenced to a term of imprisonment of 235 months. He is presently serving that sentence at Gilmer Federal Correctional Institution in Glenville, West Virginia.

As relevant to the instant petition, the testimony adduced at Petitioner's trial was as follows. Maryland State Police Sergeant Pride Rivers testified that on September 17, 2005, at approximately 5:30 p.m., he was traveling in an unmarked Maryland State Police cruiser on the outer loop of the Capital Beltway when he came upon a stalled 1983 Pontiac that was impeding the flow of traffic. (T. 116-17).[2] Sergeant Rivers, who was in full uniform, activated his emergency lights, parked a short distance behind the disabled vehicle, and placed a call on his police radio advising that he was stopping to assist. (T. 118-20). He observed Petitioner, who was the sole occupant of the disabled vehicle, exit the car while talking on a cellular phone. (T. 119). As the officer approached, Petitioner turned his back and walked to the front of his vehicle. (T. 121). While Petitioner continued his phone conversation, Sergeant Rivers looked into the car through the

---

[2] Unless otherwise indicated, all citations to the trial transcript are to testimony given on June 6, 2006.

open window of the driver's side door and immediately observed a partially concealed handgun protruding from beneath an armrest in the front seat. (T. 122-23). Intending to call for police back-up, he advised Petitioner that he was returning to his police cruiser to request roadside assistance. (T. 129). Before he reached his cruiser, Petitioner approached the driver's side door of the disabled vehicle and reached for the handle, at which point Sergeant Rivers drew his service weapon, advised that there was a gun in the car, and ordered Petitioner to assume a prone position. (T. 130-32). Sergeant Rivers asked a passing motorist to call for police assistance and a number of officers arrived a short time later. (T. 132-33).[3]

Maryland State Trooper Ryan Shaffer testified that he was traveling on I-270, approximately ten to fifteen miles from the scene, when he received a call from the police barrack advising him to assist a disabled motorist on the beltway. (T. 181). While en route, he received a second call indicating that another trooper had "rolled up on" the disabled vehicle "without being called to it" and "was in some kind of a situation." (*Id.*). Upon arriving at the scene, Trooper Shaffer observed Petitioner lying in a prone position surrounded by approximately ten other police officers. (T. 175). As directed by Sergeant

---

[3] Sergeant Rivers was the sole witness at Petitioner's pre-trial suppression hearing. His testimony at that hearing was consistent with his trial testimony.

3

Rivers, Trooper Shaffer handcuffed Petitioner, searched him, and placed him in the rear of his cruiser before returning to the scene and securing the handgun from beneath an armrest in the front seat of the disabled vehicle. (T. 176-77).

Following his conviction, Petitioner filed a timely appeal to the United States Court of Appeals for the Fourth Circuit, alleging that this court erred in denying his motion to suppress and abused its discretion by refusing to permit him to reopen his case-in-chief to present the testimony of an unsubpoenaed witness. He further challenged the legal sufficiency of the evidence adduced at trial and claimed that his sentence was unlawful. While his direct appeal was still pending, Petitioner attempted a collateral attack on his conviction, filing a *pro se* motion "Pursuant to Fed.R.O.C.P § 60(b)(3) to Set Aside Judgment for Fraud upon the Court and Newly Discovered Evidence." (Paper 45). The court construed that motion as brought pursuant to 28 U.S.C. § 2255, and dismissed it, without prejudice, as premature. (Papers 47, 48).[4]

On February 19, 2008, the Fourth Circuit affirmed Petitioner's conviction. *See United States v. Wright*, 264 Fed.Appx. 341 (4th Cir. 2008) (per curiam). As relevant to the

---

[4] Petitioner attempted to appeal this ruling (paper 50), but on March 10, 2008, the Fourth Circuit denied a certificate of appealability and dismissed the appeal (paper 52).

4

instant motion, the court found as follows with respect to his Fourth Amendment challenge:

> Contrary to Wright's assertion, Sergeant Rivers did not need to have reasonable suspicion or probable cause when he stopped on the roadway behind Wright. Wright's vehicle was broken down in a travel lane of a busy highway, impeding traffic and causing delays, and Sergeant Rivers stopped to assist Wright. Sergeant Rivers' stop to assist the disabled vehicle does not implicate the Fourth Amendment; thus, Wright was not seized. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). As Rivers was walking past Wright's car to speak with Wright, who was standing near the front of the car, Rivers looked through the open window and saw a firearm in plain view. Under the plain view doctrine, Sergeant Rivers was authorized to make a warrantless seizure of the handgun from the vehicle because he possessed probable cause that the vehicle contained evidence of a crime. *See Texas v. Brown*, 460 U.S. 730, 741 n. 6, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997).

*Wright*, 264 Fed.Appx. at 342-43. The court further found no reason to disturb this court's credibility assessment regarding Sergeant Rivers' testimony at the pre-trial hearing, and held that "the seizure of the handgun was lawful and the court properly denied the suppression motion." *Id*. at 343.

After the Supreme Court denied his petition for a writ of *certiorari*, *see Wright v. United States*, 128 S.Ct. 2948 (2008), Petitioner renewed his collateral attack on the conviction by filing the instant § 2255 motion (paper 59), accompanied by a

motion for leave to take discovery (paper 60). The court directed the Government to respond within sixty days, but subsequently granted two extensions. Shortly after the second extension was granted, Petitioner filed a motion for a writ of mandamus, in this court, seeking an order compelling the Government's prompt response to his § 2255 petition. (Paper 68).[5] Observing that the Government's response was not yet due, the court denied Petitioner's motion as moot. (Paper 69). After the Government's third request for an extension was granted, Petitioner filed a motion for disqualification of the undersigned judge. (Paper 77).

**II. Motion for Disqualification**

Pursuant to 28 U.S.C. § 144, Petitioner moves for disqualification of the undersigned "on the grounds that she has a personal bias or prejudice against [him] and is no longer an impartial or disinterested trier of fact." (Paper 77, at 1). In support of his motion, Petitioner has attached an "Affidavit of Bias," asserting that the court improperly: (1) denied his suppression motion; (2) stated, upon reviewing an allegedly "fabricated" police report during a bench conference at trial, "we can get into a lot of trouble"; (3) granted the Government extensions of time in which to respond to Petitioner's § 2255

---

[5] Although this motion was filed in this case, it was captioned "United States Court of Appeals for the Fourth Circuit."

motion; and (4) "dismissed his motion for a writ of mandamus as moot." (*Id*. at 2-3). Petitioner's affidavit includes a "Certificate of Counsel of Record," in which he "declare[s] that [the] foregoing Affidavit is made in good faith." (*Id*. at 4).

Section 144 of Title 28 provides, in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceedings.

28 U.S.C. § 144. To be legally sufficient, an affidavit "must allege *personal* bias or prejudice caused by an extrajudicial source other than what the judge has learned or experienced from his participation in the case." *Sine v. Local No. 992 Int'l Brotherhood of Teamsters*, 882 F.2d 913, 914 (4th Cir. 1989) (emphasis in original) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984); *Fitzgerald v. Penthouse International Ltd.*, 691 F.2d 666, 672 (4th Cir. 1982)). "The judge against whom an affidavit under § 144 is filed must pass upon the legal sufficiency of the facts alleged," and "[i]t is equally h[er] duty . . . to deny the relief claimed on account of the facts stated in the affidavit if they are legally insufficient, as it is to grant relief if they are sufficient." *Sine*, 882 F.2d at 914 (citing

*Simmons v. United States*, 302 F.2d 71, 75 (3rd Cir. 1962); *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979)). In this analysis, "[a] judge's actions or experience in a case or related cases or attitude derived from h[er] experience on the bench do not constitute a basis to allege personal bias." *Id*. at 915 (citing *Shaw*, 733 F.2d at 308).

The affidavit attached to Petitioner's motion is legally insufficient insofar as it fails to allege "personal bias or prejudice caused by an extrajudicial source other than what the judge has learned or experienced from h[er] participation in the case." *Sine*, 882 F.2d at 914. Petitioner's first allegation relates to the court's denial of his suppression motion; however, "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994). The fact that Petitioner is dissatisfied with the court's ruling on his motion to suppress, which was upheld on appeal, is not sufficient to show bias or partiality in this case. Similarly, the court's granting of extensions for the Government to respond to Petitioner's § 2255 motion and its denial of his petition for a writ of mandamus are judicial rulings that do not support claims of bias or prejudice.

Petitioner's principal complaint relates to a bench conference concerning an evidentiary issue that arose during his

attorney's cross-examination of Sergeant Rivers at trial. When defense counsel produced a police report and asked the witness if he recognized it, the Government requested to approach the bench. Once there, the prosecutor stated:

> While I understand that [defense counsel] can use anything to refresh the witness's recollection, he cannot impeach this witness based on the report of another officer. The report that he just showed this witness was authored by another trooper. This witness did author a report, and I have no problem with [defense counsel] using this one, but I do object to him being impeached[.]

(T. 165). Upon examining the document in question, the court said to defense counsel, "[t]his is a report written by Trooper Shaffer. . . . You asked [Sergeant Rivers] if he recognized it. That's not appropriate. You want to ask him did he write this." (T. 166). The court then added, "we can get into a lot of trouble. . . . by just asking him if he recognizes it," after which counsel agreed to ask the witness whether he authored the report. (T. 167).

Petitioner now contends that the court's comment, "we can get into a lot of trouble," somehow evidences its bias against Petitioner and/or its awareness that this report was fabricated. The comment, however, merely related to a fairly routine evidentiary ruling during the course of Petitioner's trial. Nevertheless, Petitioner's allegation to the contrary is not sufficient to establish personal bias on the part of the

9

undersigned judge, nor does it stem from an "extrajudicial source other than what the judge has learned or experienced from his participation in the case." *Sine*, 992 F.2d at 914. Because Petitioner's affidavit is legally insufficient, his motion will be denied. Accordingly, the court finds that it may consider the merits of Petitioner's remaining motions.

**III. Motion for Leave to Conduct Discovery**

Concomitant with the filing of his § 2255 petition, Petitioner filed a motion for leave to conduct discovery. (Paper 60). Specifically, Petitioner seeks the following materials from the date of his arrest: (1) videotape footage from a camera mounted in the vehicle of Trooper Shaffer; (2) recorded radio communications between Trooper Shaffer and the police barracks; and (3) recordings of the 911 calls made by passing motorists at the request of Sergeant Rivers. He asserts that these materials will demonstrate that "Sgt. Rivers committed perjury when he testified that he was the initial officer to stop and assist petitioner." (Paper 60, at 2).

Rule 6(a) of the Rules Governing § 2255 Proceedings provides that "[a] party may invoke the processes of discovery . . . if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." In *United States v. Roane*, 378 F.3d 382, 402-03

(4th Cir. 2004), the Fourth Circuit identified the following as the "proper standard" in considering such claims:

> The Supreme Court determined in *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), and its progeny, *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997), that 'good cause' for discovery exists when a petition for habeas corpus establishes a prima facie case for relief. *See Harris v. Nelson*, 394 U.S. at 290, 89 S.Ct. 1082. Specifically, discovery is warranted, "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Bracy*, 520 U.S. at 908-09, 117 S.Ct. 1793 (citing *Harris*, 394 U.S. at 299-300, 89 S.Ct. 1082).

(quoting *Johnson v. Pruett*, No. 3:97CV895 (E.D.Va. May 3, 2000). In that case, the court found no error where the district court "carefully considered each claim asserted . . . and assessed whether the Defendants had shown good cause for discovery." *Roane*, 378 F.3d at 403.

Petitioner has failed to make the required showing here. Initially, he seeks videotape footage allegedly taken from an on-board camera in Trooper Shaffer's police cruiser. Trooper Shaffer explicitly testified at trial, however, that his car was not equipped with a camera and that he did not observe any other police vehicles at the scene that had this equipment. (T. 192). This testimony was corroborated by Sergeant Rivers (T. 144-45), and Petitioner has pointed to no evidence suggesting that videotape footage exists. Similarly, Petitioner has failed to

identify any evidence suggesting that communications between Trooper Shaffer and the police barracks were recorded. In fact, Sergeant Rivers testified at the pre-trial hearing that he did not know whether any relevant calls were recorded or even if Maryland State Police vehicle calls were routinely recorded. (PT. 34). As to the 911 calls requested by Petitioner, the Government claims that it turned copies of these tapes over to defense counsel at trial (paper 80, at 3 n. 3), and Petitioner states that they were introduced into evidence at the suppression hearing (paper 60, at 2), although the record does not support that claim. Regardless, it appears likely that these tapes have already been produced by the Government, and even if they have not, it is unclear how they could support his claims.[6] Thus, Petitioner has failed to demonstrate good cause for discovery in this case. To the extent that the materials he seeks even exist and are not already in his possession, he has made no showing that they contain exculpatory or impeaching information. *See United States v. Moss*, No. 8:05-0338-GRA, 2008 WL 4442613, * 1 (D.S.C. Sept. 25, 2008) (quoting *Hall v. United States*, 30 F.Supp.2d 883, 899 (E.D.Va. 1998)) ("a party 'must make at least a preliminary showing that requested documents

---

[6] Notably, Petitioner claims in his § 2255 motion that the 911 calls were "staged" by the Government. (Paper 59, at 23). It is unclear how these "staged" recordings could support his claims.

contain exculpatory or impeaching information in order to compel production.'"). Accordingly, this motion will be denied.

**IV. Motion to Vacate, Set Aside, or Correct Sentence**

The thrust of Petitioner's § 2255 motion is that it was Trooper Shaffer, not Sergeant Rivers, who came upon the disabled vehicle on I-495 and proceeded to conduct an illegal search, thereby recovering the gun. According to Petitioner, virtually all the relevant evidence and trial testimony to the contrary was fabricated at the behest of the Government, with the complicity of this court, and aided by constitutionally infirm defense counsel. In support of this claim, Petitioner attaches to his motion a "radio dispatch log" that he obtained through a request pursuant to the Maryland Public Information Act. He asserts that the Government failed to disclose this document in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Because of the alleged *Brady* violation, Petitioner contends that he was not given a full and fair opportunity to litigate his Fourth Amendment claim. He also takes issue with the aforementioned evidentiary ruling regarding the police report during the defense's cross-examination of Sergeant Rivers, alleging a violation of his rights under Confrontation Clause of the Sixth Amendment. Finally, Petitioner claims that his trial counsel rendered ineffective assistance by failing to heed his persistent requests to obtain the "radio dispatch log" and by

13

"acquiesc[ing] in the court's limiting of cross examination" of Sergeant Rivers. (Paper 59, at 33).

### A. Procedural Default

Aside from his allegations of ineffective assistance of counsel, the claims asserted by Petitioner in his § 2255 motion could have been raised on direct appeal, but were not; thus, they are procedurally defaulted on collateral review unless Petitioner can demonstrate "cause and actual prejudice resulting from the errors" or that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). A finding of cause for a procedural default "must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493. This showing may be excused if the movant can demonstrate that he is actually innocent of the crime. *See United States v. Bowman*, 267 Fed.Appx. 296, 299 (4th Cir. 2008) (per curiam) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish actual innocence, the petitioner must establish, by clear and convincing evidence, "actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted." *Mikalajunas*, 186 F.3d at 494.

Here, Petitioner appears to argue that he could not have brought his claims on direct appeal because he was not in possession of the "radio dispatch log," which he contends demonstrates that Sergeant Rivers and Trooper Shaffer committed perjury at his trial. The "radio dispatch log," however, is entirely consistent with the testimony adduced at trial. The document reflects that on September 17, 2005, at 5:06 p.m., Trooper Shaffer was assigned to "assist [a] motorist" at an unspecified location, and that, at 5:21 p.m., he "recovered [a] stolen gun" from a Pontiac. (Paper 59, Ex. 1, at 4). Notably, the 5:21 p.m. entry also indicates that "Sgt. P. Rivers . . . was originally assigned until [5:30 p.m. on] 9/17/2005." (*Id.*). These entries substantially corroborate the trial testimony of both Sergeant Rivers and Trooper Shaffer; indeed, insofar as the log reflects that Sergeant Rivers was "originally assigned," it is persuasive evidence refuting, rather than supporting, Petitioner's claims. Because Petitioner offers no additional evidence in support of his claims, he has failed to demonstrate cause and prejudice sufficient to excuse his procedural default.

Insofar as the "radio dispatch log" constitutes "newly discovered evidence," as Petitioner claims, it can only "open the door to habeas corpus relief if it can form the basis of an actual innocence claim." *Higgs v. United States*, --- F.Supp.2d ----, 2010 WL 1875760, *13 (D.Md. Apr. 6, 2010) (citing *Herrera*

15

*v. Collins*, 506 U.S. 390, 404 (1993)). Petitioner, however, does not offer the evidence in support of a claim of actual innocence; his contention is that but for an illegal search of his vehicle by Trooper Shaffer, the gun would not have been discovered. In other words, Petitioner's claim is one of legal, not factual, innocence. The actual innocence standard "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer*, 505 U.S. at 339-41). Petitioner does not allege that he did not possess the gun in question, much less provide any evidence in support of such a claim. Accordingly, he cannot establish actual innocence and, aside from his allegations of ineffective assistance of counsel, his § 2255 motion is procedurally barred.[7]

B.  **Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel may be raised for the first time on collateral review. *Massaro v. United States*, 538 U.S. 500, 504 (2003). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-

---

[7] Additionally, because he had a full and fair opportunity to litigate his Fourth Amendment claim, his challenge on that ground is not cognizable on collateral review. *See Stone v. Powell*, 428 U.S. 465, 494 (1976).

prong test that a petitioner must satisfy to prevail on an ineffective assistance of counsel claim. First, the petitioner must show that counsel's performance was deficient when measured against an objective standard of reasonableness. *Id*. at 687-688. Second, the petitioner must show that counsel's deficient performance prejudiced the defense, by depriving the petitioner of "a trial whose result is reliable." *Id*. at 687.

To establish the first prong, Petitioner must produce evidence that counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id*. at 687. There is a presumption that counsel's actions are strategic trial decisions. *Id*. at 689. The court is thus highly deferential to counsel's decisions and reviews the challenged conduct in light of the totality of the circumstances. *Id*. at 689-90.

As for the second prong, Petitioner must show that but for his counsel's deficient performance, the result of the proceedings would have been different. *Id*. "It is not enough for the [petitioner] to show that the [deficient performance] had some conceivable effect on the outcome of the proceeding"; instead, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome"

17

of the proceeding. *Id*. If no prejudice is established, a court need not review the reasonableness of counsel's performance in order to determine whether counsel provided ineffective assistance. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998).

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to obtain the "radio dispatch log" and by failing to object to the court's limitation on his cross-examination of Sergeant Rivers. As noted previously, the "radio dispatch log" could not have helped Petitioner's cause at trial; thus, no prejudice could have inured to Petitioner by his counsel's failure to obtain it. Similarly, Petitioner cannot establish that he was prejudiced by counsel's failure to object to the court's evidentiary ruling. Petitioner erroneously asserts that his attorney was precluded by the court from impeaching Sergeant Rivers; to the contrary, he was merely precluded from using a statement apparently drafted by another witness as a prior inconsistent statement of the witness on the stand. The record reflects that defense counsel vigorously cross-examined Sergeant Rivers, attempting to impeach the witness by, *inter alia*, pointing to inconsistencies between his trial testimony and the testimony at the suppression hearing. Because Petitioner has failed to show that his trial counsel's representation was deficient, or that any prejudice inured to

him as a result, his ineffective assistance of counsel claims must fail.

## V. Conclusion

For the foregoing reasons, Petitioner's motions to vacate, set aside, or correct sentence, for leave to conduct discovery, for summary judgment, for disqualification of the undersigned judge, to strike the Government's response, and for expedited consideration will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge